Geraldine Fetters ROACH, Appellant,

v.

John BENSON et al., Appellees.

No. 1655.

Supreme Court of Alaska.

Dec. 15, 1972.

W. Clark Stump, Ketchikan, for appellant.

Peter R. Ellis, Ketchikan, for appellees.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

ERWIN, Justice.

This is an appeal by Geraldine Fetters Roach in an action to recover for personal injuries sustained by her as a result of a fall while on defendants' property. Judgment for the defendant property owners was entered by the superior court for the First Judicial District sitting without a jury at Ketchikan, Alaska, on December 7, 1971, on the grounds that Mrs. Roach was contributorily negligent in causing the fall.

Plaintiff, a fifty-one year old woman, arrived in Ketchikan, Alaska, with her son at 7:00 a. m. on February 4, 1970, enroute to a logging camp where her son was employed. They planned to store appellant's car in Ketchikan and fly to the camp the same day.

After taking care of some preliminary matters, the plaintiff and her son proceeded to the defendants' car storage area. There they were met by the resident manager and conducted onto the premises.

The car was parked and the manager was paid $15.60 for one month's car storage rental. Plaintiff's son requested permission from the manager to use the phone to call a cab to take them to the airlines. The manager said the phone was upstairs and that it would be just as close to use the back entrance.

The manager accompanied plaintiff and her son to the back entrance, unlocked the door, and followed them outside. It was raining and the plaintiff and Mrs. Norman conversed while standing underneath a shed attached to the storage building. Plaintiff's son preceded her from under the shed onto the dock area and noticed a large spout of water coming off the roof. To avoid it he had to step to the left and walk around the spout of water. There were no gutters or rain spouts along the edge of the shed, and the stream of water coming down from the shed was fairly heavy on the corner by the stairwell but decreased as it went down the roof of the building.

Plaintiff's son stood and waited in the rain for approximately a minute and then called to his mother telling her they had better go. Plaintiff proceeded from under the shed roof onto the dock area. Plaintiff testified that as she started to walk out from under the shed roof area she noticed water coming from somewhere. Her testimony established that she tried to avoid the water, or most of it, and that she then slipped and fell sustaining a trimalleotar fracture of her right ankle.

The trial was held before the court, without a jury, on the question of liability alone. After the plaintiff had presented her case, the defendants introduced two large pictures of the slip and fall area and requested a view of the scene of the accident. After the judge had viewed the scene the defense rested. After briefs were filed the court heard closing arguments on the issue of liability.

After reviewing the evidence, the trial court concluded that the defendants were negligent and further, that plaintiff was contributorily negligent thus barring her recovery for damages. The judge stated the findings of contributory negligence in the following language:

[I]t's the belief of this court that the big problem was that plaintiff was ducking the water, and the way she was walking she crossed her feet and did not walk as an ordinarily prudent person would walk and consequently fell. I therefore find the plaintiff was contributorily negligent and therefore may not recover in this action.

Appellant's argument on appeal is that the trial judge's finding of contributory negligence was clearly erroneous.

 Contributory negligence has been defined as conduct of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legal cause contributing to the harm suffered by plaintiff. Plaintiff's conduct is viewed as a legally contributing cause together with defendant's negligence for plaintiff's injury.[1] Plaintiff is required to conform his conduct to that of the reasonably prudent man,[2] and a failure to do so is contributory negligence.

 Contributory negligence is an affirmative defense and must be proved by a preponderance of the evidence.[3] However, defendant is not required to put on witnesses of his own to establish contributory negligence, but may establish that plaintiff

---

1. Bertram v. Harris, 423 P.2d 909, 914 n. 10 (Alaska 1967).

2. W. Prosser, The Law of Torts § 65 at 419 (4th Ed.1971).

3. In Harris v. Barrett & Lesh, Inc., 426 P.2d 331, 334 (Alaska 1967), (a jury instruction to this regard was held proper); Ridgeway v. North Star Terminal & Stevedoring Co., 378 P.2d 647, 651 (Alaska 1963).

was contributorily negligent by plaintiff's own evidence or inferences favorable to defendant "which appear from the presentation of the plaintiff's case either on direct or cross-examination." [4]

Civil Rule 52(a) establishes the limits of review on the findings of a trial court sitting without a jury. It provides in pertinent part:

> In all actions tried upon the facts without a jury . . . . [f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of [sic] the credibility of the witnesses.

This rule has been interpreted to require this court to find clear error in the trial court's judgment before the findings could be classified as erroneous and set aside.[5]

█ The defendants must demonstrate that the plaintiff is contributorily negligent by a preponderance of the evidence.[6] If there was *no* evidence from which he could reasonably infer that contributory negligence existed, a finding of contributory negligence would be clearly erroneous and this court should reverse the decision.[7]

█ Moreover this evidence must be more than knowledge of the existence of a hazard. In Cummins v. King & Sons, 453 P.2d 465, 467 (Alaska 1969), this court held:

> We have held that mere knowledge of an icy condition before passing over

it does not establish negligence. We now hold that one's attempt to pass over ice, with knowledge of the icy condition, does not by itself raise an inference of negligence so as to permit that issue to be submitted to the jury. Before such issue properly could be submitted to a jury, there must be other evidence giving rise to an inference that in the manner in which he crossed or walked upon the ice, one lacked the care of a reasonably prudent person concerned for his own safety.

With this criteria in mind we have made a thorough search of the record to determine if there was any evidence from which a trier of fact could draw a reasonable inference of contributory negligence.[8]

█ Such a review does not reveal any unreasonable conduct on behalf of appellant which could be deemed contributory negligence. Appellant simply tried to avoid a visible hazard and slipped and fell while doing so. There is no testimony in the record which indicated haste, hazardous movements, or a failure to exercise due care on the part of the plaintiff. We thus conclude that such a finding was clearly erroneous on the factual record here presented.

The decision of the trial court is reversed and this case is remanded for further proceedings in conformity with this opinion.

---

4. Smith v. Boen-Koon & Egge-Cummins Constr. Co., 384 P.2d 283, 286 (Alaska 1963). *See* Harris v. Barrett & Lesh, Inc., 426 P.2d 331, 333 (Alaska 1967).

5. Smith v. Boen-Koon & Egge-Cummins Constr. Co., 384 P.2d 283, 286 (Alaska 1963). Alaska follows the majority rule in this regard rather than the view that findings of negligence are not protected by Rule 52. *See* McAllister v. United States, 348 U.S. 19, 22–23, 75 S.Ct. 6, 99 L.Ed. 20, 23–24 (1954) and Wright and Miller, Federal Practice and Procedure: Civil § 2590 (1971).

6. The standard of appellate review of a finding of negligence or contributory

negligence in a judge tried case is explained in 5A Moore's Federal Practice § 52.03[1] on page 2624.

7. An inference has been defined as "a fact or proposition deduced, by a process of reasoning, as a logical consequence from other established facts." Cummins v. King & Sons, 453 P.2d 465, 467 (Alaska 1969).

8. Included in the appendix are pertinent parts of the testimony which reflect upon this issue. It should be noted that the person accompanying appellant to the rear door died before this case was presented and her testimony was not available to the court.

The only testimony on this issue is as follows:

a. Plaintiff's son on direct examination:

\* \* \* \* \* \*

Q. After you left the protective covering of the ship, what did you do?

A. Well, I went out there, and I stood a little bit, and my mother and Mrs. Norman were standing there talking so I told my mother, I says "Come on, Mom. We better go."

\* \* \* \* \* \*

b. Plaintiff's son on cross-examination:

\* \* \* \* \* \*

Q. Did you have any trouble walking on the dock?

A. No sir.

Q. Now, when Mrs. Norman and your mother were talking just outside the door, did you stay and listen to the conversation?

A. No sir.

Q. Did you pause long?

A. Yes sir, outside on the wharf.

Q. On the wharf?

A. Yes, sir.

Q. In the rain?

A. Yes, sir.

\* \* \* \* \* \*

Q. Do you know what time it was approximately?

A. Approximately eleven o'clock in the morning.

Q. And—uh—you were going to catch an airplane?

A. Yes sir.

Q. And what time was the airplane leaving?

A. It was supposed to have left at 11:15.

\* \* \* \* \* \*

Q. Indiscernible. Why did you tell her you'd have to go?

A. Because I just didn't want to stand out there and listen to two women yak.

\* \* \* \* \* \*

c. Plaintiff's testimony on direct examination:

\* \* \* \* \* \*

Q. Okay. And what did you do when you were just walking out (indiscernible).

A. I started to walk out. I noticed water coming from somewhere. I tried to avoid it.

\* \* \* \* \* \*

Q. Mrs. Roach, were you in a hurry to get down to the airplane when you were leaving?

A. No.

\* \* \* \* \* \*

Q. Were you in a hurry?

A. No.

\* \* \* \* \* \*

Q. And after you—what happened when you tried to avoid the water coming down off the shed?

A. I tried to avoid it.

Q. And how—what happened?

A. After I tried to avoid it, I stepped my right foot over toward my left. That's when I fell.

\* \* \* \* \* \*

d. Plaintiff's testimony on cross-examination:

\* \* \* \* \* \*

Q. And once you walked between the rear of the building and the boat, then which way did you go with reference to this plain—Defendant's exhibit A? Which way did you go?

A. Well, we stood there and talked awhile, and then my son and Mrs. Norman talked awhile, and I walked back this way. [Referring to Exhibit]

Q. Is that to the left?

A. That was to the left.

Q. And that's around the other side of the boat?

A. Yes. I was looking around and not really paying much attention, but I was looking and then—

\* \* \* \* \* \*

Q. Did you trip over anything?

A. No.