Jeanne KAATZ, Administratrix of the
Estate of Donald E. Kaatz,
Deceased, Appellant,

v.

STATE of Alaska et al.,
Appellees.

STATE of Alaska et al.,
Cross-Appellants,

v.

Jeanne KAATZ, Administratrix of the
Estate of Donald E. Kaatz,
Deceased, Cross-Appellee.

Jeanne LINDLEY, Representative of the
heirs of Ronald Lindley, Deceased, and
Elac, Ltd., an insurance corporation, Ap-
pellants,

v.

STATE of Alaska et al.,
Appellees.

STATE of Alaska et al.,
Cross-Appellants,

v.

Jeanne LINDLEY, Representative of the
heirs of Ronald Lindley, Deceased, and
Elac, Ltd., an insurance corporation,
Cross-Appellees.

Nos. 2259, 2291.

Supreme Court of Alaska.

Sept. 17, 1975.

M. T. Thomas and W. G. Ruddy of Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellants, Jeanne Kaatz, Jeanne Lindley and others.

Allen T. Compton, Juneau, for appellees.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

CONNOR, Justice.

This appeal and cross-appeal result from a superior court ruling which denied any recovery to two wrongful death claimants.

We must decide whether the trial court erred in finding that the negligence of the State of Alaska caused the accident which took the decedents' lives. Additionally, we must decide whether the trial court erred in finding that the decedents' own negligence also contributed to their demise. Finally, if the court below did not err with regard to its findings of fact, we must determine whether the doctrine of contributory negligence should continue to operate as a complete bar to all recovery in cases of this type.

### I.

The decedents, Ronald Lindley and Donald Kaatz, were employed by the Burgess Construction Company in early December 1970. At that time the company was working on a project in Wrangell, Alaska. The project required gravel, which the company customarily obtained from Reid's gravel pit, located three miles south of Petersburg, Alaska, just off the Mitkof Highway.

In order to transport the gravel from the Petersburg area to Wrangell, the following procedure was usually utilized. Donald Kaatz, having taken up temporary residence in the town of Petersburg, readied the gravel at the pit for transportation to Wrangell. Periodically, the Burgess Construction Company would send a barge up the Wrangell Narrows to Petersburg. Before leaving Wrangell, the company would place a front-end loader on the barge. Ronald Lindley, an experienced operator of front-end loaders, would accompany the vessel to the Petersburg barge dock, located approximately four miles south of town.

Kaatz would meet the barge at the dock and, together with Mr. Lonnie Dreka, who supervised the operation, he would help to prepare the barge to carry the gravel back to Wrangell. When this was done, Kaatz and Dreka would drive Kaatz' pickup truck along the Mitkof Highway to the gravel pit, which was one mile north of the barge dock. Lindley would follow, driving the front-end loader.

When the men reached the gravel pit, Lindley would use the loader to fill a truck with gravel. The vehicle was then driven back to the barge dock, where the gravel was placed onto the vessel, along with the front-end loader. Dreka and Lindley then would accompany the barge back to Wrangell and unload it. Kaatz would return to his chores in and around Petersburg.

On the evening of December 9, 1970, the barge arrived at the Petersburg dock around 7:00 p. m. Kaatz met the barge when it arrived. Lindley, Dreka and the front-end loader were on board. The weather was overcast, with intermittent rain and drizzle. The temperature

throughout the day had hovered in the mid to low thirties.

On this particular evening Ronald Lindley did not wait for Dreka to finish preparing the barge for loading. Instead, he and Kaatz set out together in the front-end loader, headed north towards the gravel pit. When the balloon-tired vehicle had traveled approximately half of the one mile distance from the barge dock to the gravel pit, it began to descend a slight grade on the Mitkof Highway. At the base of the grade, the road turned to the right. The vehicle did not reach that curve because, as the loader descended the grade, it toppled off the side of the northbound lane over an embankment. Lindley and Kaatz were both killed.

The widows of these men each brought wrongful death actions against the State of Alaska. They alleged that the state was negligent in that it had failed to adequately maintain the icy road, so that it would be safe for vehicular traffic. Judge Victor D. Carlson tried the case and rendered a verdict for the defendants. In doing so, he specifically concluded that "[t]he negligence of the State of Alaska [was] a cause of the death of Messrs. Lindley and Kaatz." However, he also found that the icy and very slippery condition of the Mitkof Highway on the evening of December 9, 1970, "was known to Mr. Kaatz before he climbed into the cab of the loader and it became known to Mr. Lindley immediately when the vehicle proceeded onto the highway." In addition, he found that it was "unreasonable for any person experienced with a front-end loader to operate such a vehicle on the highway" under those conditions. He thus concluded that the contributory negligence of the decedents was a complete defense to their claims.[1]

The appellants contend that Judge Carlson clearly erred in finding that the decedents' conduct constituted contributory negligence. Alternatively, they urge us to abandon the doctrine of contributory negligence and adopt a "pure" comparative negligence formula instead.

The state, in its cross appeal, contends that the court erred in finding that it was negligent in its maintenance of the road and that such negligence caused the deaths of Lindley and Kaatz. The state also argues that Judge Carlson did not err in finding that the decedents were negligent and urges us not to abandon the doctrine of contributory negligence in favor of comparative negligence. The record presented in this case requires us to address each of the contentions that has been raised.

II.

We shall begin our analysis by determining whether the trial court erred in finding that negligence on the part of both the state and the decedents caused the accident. At the outset it is useful to restate the standard for review of judge-tried cases in which all pertinent claims of error are predicated on an assertion of insufficient evidence. In *Alaska Foods Inc., v. American Manufacturer's Mutual Insurance Co.*, 482 P.2d 842, 848 (Alaska 1971), we stated:

"The rule is this: Under Civil Rule 52(a) we shall not set aside the finding of fact of a trial judge unless it is clearly erroneous. A finding is clearly erroneous when, although there may be evidence to support it, we are left with the definite and firm conviction on the entire record that a mistake has been committed.

This rule applies to any finding, regardless of the nature of the evidence upon which it is based. The only difference between our review of findings based on oral testimony, and those based on documentary evidence or undisputed facts, is that in the former case we must pay some deference to the trial judge's

---

1. Judge Carlson indicated on the record that he did not favor the doctrine of contributory negligence, but was constrained by precedent to apply it.

assessment of the credibility of witnesses, whereas in the latter case, we need not. It is because of the deference we pay to the trial judge's assessment of credibility of witnesses where there is oral testimony that we have characterized our scope of review in cases where there is no oral testimony as being a 'broader' type of review. Even in the latter situation, clear error must appear under the rule we apply.

The clearly erroneous standard, as we apply it, means something more than merely showing it is more probable than not that the trial judge was mistaken. We must be convinced, in a definite and firm way, that a mistake has been committed. We must be well persuaded by the party seeking to set aside the trial judge's findings before we will hold he was wrong." (footnotes omitted)[2]

With this standard in mind, we turn to the factual issues in this case.

The state, in its cross appeal, contends that its highway maintenance crew was not negligent in having failed to sand the Mitkof Highway before the accident occurred.

In *State v. Abbott*, 498 P.2d 712 (Alaska 1972), we held that the state has a duty to exercise reasonable care to maintain Alaska's highways in safe condition.[3] That duty certainly extends to hazards created by ice and snow.

A breach of this duty of care occurs whenever lack of reasonable road maintenance exposes a person to an unreasonable risk of harm. In *Abbott* we stated:

"In order for a plaintiff to show that the state exposed him to an *unreasonable* risk of harm he would have to demonstrate that the likelihood and gravity of the harm threatened outweighed the util-

ity of the state's conduct and the burden on the state for removing the danger. In making that determination in the case at bar, all of the following factors would be relevant: whether the state had notice of the dangerous condition, the length of time the ice and snow had been on the highway, the availability of men and equipment, and the amount of traffic on the highway." 498 P.2d at 725. (footnotes omitted, emphasis in original)

In the present case, the evidence clearly supports a finding of negligence on the state's part.

Evidence at trial established that by 6:00 p. m. on the date of the accident, the state had both actual and constructive notice regarding the dangerous condition of the highway. For example, testimony established that by noon the road was dangerous, and that by 5:00 p. m. it was extremely dangerous, the worst that some Petersburg observers had ever seen. In a deposition, the school bus driver stated that he had alerted school authorities of the dangerous road conditions in mid-afternoon. Indeed, the state's road maintenance foreman in Petersburg, Mr. Cecil H. Donahue, conceded that he drove the road between 5:00 and 6:00 p. m., and he knew then that the road "probably did need sanding." Notice to Donahue was notice to the state in these circumstances.

The accident occurred at approximately 8:00 p. m. By that time the road had been in a bad condition for many hours. Since the highway maintenance facility was only about one mile from where the accident took place, time, in conjunction with logistics, would not have been a barrier to sanding the road. Nevertheless, the state did not begin sanding until after the accident.[4]

---

2. *Accord, Ficke v. Alaska Airlines*, 524 P.2d 271, 274 (Alaska 1974).

3. *See also State v. I'Anson*, 529 P.2d 188, 193–94 (Alaska 1974).

4. *Compare Tetreault v. State*, 50 Misc.2d 170, 269 N.Y.S.2d 812 (Ct.Cl.1966), where the

state began sanding ½ hour after it became aware of the icy conditions. The court found that the state was not negligent, despite its failure to reach and sand that portion of the highway where the accident occurred.

Regarding the availability of men and equipment, suffice it to say that shortly after the accident, the road in fact was sanded.[5]

As to the amount of traffic on the highway, foreman Donahue stated that the accident occurred on the "most heavily traveled" portion of the Mitkof Highway. Other evidence established that, even on that raw, nasty night, numerous other vehicles were on the road.

Finally, we have held that an unexcused violation of administrative regulations may be negligence itself, or may be relevant evidence bearing on the issue of negligent conduct. *Ferrell v. Baxter,* 484 P.2d 250, 263–64 (Alaska 1971). The Department of Highways has adopted certain "standard operating procedures" with regard to highway maintenance. S.O.P. 4301–06 provides at page 13:

"Sanding crews must be dispatched at the first indication that traffic is having difficulty, with particular attention given to intersections and grades. Maintenance crews in outlying areas must keep steep grades and sharp curves well sanded, working overtime and at night if conditions warrant. Maintenance foremen must be alert to this condition and plan accordingly, and employees should be instructed to report for duty when inclement weather threatens. Sanding operations must continue as long as conditions warrant. First priority should be given to hills, intersections and curves. In the vicinity of the more populated areas, sanding crews should be dispatched in sufficient time to provide protection for the early morning and evening traffic proceeding to and from work and school."

Certainly the spirit, if not the letter of this regulation, was not complied with. The record, as a whole, shows no clear error whatever in Judge Carlson's finding that the state was negligent.

■ The state also argues that Judge Carlson erred in finding that the state's negligence caused the front-end loader to topple off the road. It contends that the evidence shows that the loader was simply driven off the road. Since there is no indication of slipping or sliding prior to the vehicle falling off the road, the state seemingly reasons that the icy road conditions did not cause the accident.

However, appellants never contended that the vehicle slid off the road. Their theory is that in order to obtain traction on a downhill grade with a rightward turn at the end, the driver of the vehicle was forced to allow his rig to go into the snow berm on the side of the road. The accident occurred when the berm suddenly and unpredictably broke through or ran out, causing the rig to topple off.

Appellants came forward with several witnesses who had extensive experience with operating heavy equipment. They

---

5. This does not mean that proof of subsequent repairs is to be admitted as direct evidence of negligence. *Cf. Otis Elevator Co. v. McLaney,* 406 P.2d 7, 15 (Alaska 1965); *Gunsolus v. City of Fairbanks,* 391 P.2d 13, 14 (Alaska 1964); *City of Anchorage v. Steward,* 374 P.2d 737, 739–40 (Alaska 1962). Rather, Alaska's position on this matter comports with the Federal Rule of Evidence 407, which provides:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. *This rule does not require the exclusion of evidence of subsequent measures when offered for an-*

*other purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."* (emphasis added)

Specifically, in *State v. Abbott,* 498 P.2d 712, 725 (Alaska 1972), we held that "availability of men and equipment" is a relevant factor in determining whether lack of road maintenance exposed plaintiff to an unreasonable risk of harm. Such evidence is crucial in determining whether a defendant could have done what plaintiff is claiming should have been done.

Therefore, the fact that the road maintenance crew in the present case did sand the Mitkof Highway shortly after the accident is admissible to prove that the road also could have been sanded before that time.

testified that the driver probably had driven into the berm to obtain traction, and that this was the proper and only recourse available, once the vehicle started down the icy grade. To overcome this showing, the state offered highly speculative testimony to the effect that the men might have simply driven off the road during a moment of inadvertence.

In *City of Fairbanks v. Schaible*, 375 P. 2d 201, 204 (Alaska 1962), we stated:

"A mere possibility of causation is not enough. When the matter remains one of conjecture . . . the trial court must find against the party carrying the burden of proof."

Appellants produced substantial testimony tending to show that decedents were forced to drive into the snow berm to obtain traction. That the vehicle did not leave the main road before descending the grade also substantiates this theory. We find that no error was made in the ruling that the state's negligence in failing to sand the road was a cause of the accident.

Turning to the conduct of the decedents, appellants urge that Judge Carlson erred in finding that Lindley and Kaatz were also negligent on the night of December 9, 1970. Because the facts surrounding the conduct of each man differ slightly, we will consider each case separately.

With regard to Ronald Lindley, Judge Carlson found that:

"22. The condition of the Mitkof Highway . . . became known to Mr. Lindley immediately when the vehicle proceeded onto the highway.

"23. The condition of the Mitkof Highway on the evening of December 9, 1970 was so slippery that it was unreasonable for any person experienced with a front-end loader to operate such a vehicle on the highway except in case of an emergency."

Having apparently determined that Lindley's conduct was both voluntary and unreasonable,[6] the judge concluded that Lindley's own negligence was a cause of his death.

■■■■ It is well established that knowingly crossing icy terrain in and of itself does not constitute negligent conduct.[7] On the other hand, we have often intimated that knowing or having reason to know of such a dangerous condition is a minimum prerequisite to establishing negligence on the part of a plaintiff.[8] In Ronald Lindley's case we must attempt to determine whether it was unreasonable to infer that he knew or should have known of the Mitkof Highway's icy condition *immediately* upon entering into it.[9]

Our review of the record suggests that, in concluding that Lindley was aware of the road's condition immediately upon entering onto it, Judge Carlson apparently inferred knowledge based on the testimony of witnesses who stated that the road generally was very icy by late afternoon. However, the only direct testimony regarding the condition of the road immediately in front of the barge dock supports the conclusion that Lindley would not have realized the hazardous condition until it was too late to do anything about it, i. e., after

---

6. *Cf. Hale v. O'Neill*, 492 P.2d 101, 103 (Alaska 1971); *Young v. State*, 491 P.2d 122, 124–25 (Alaska 1971).

7. *Kremer v. Carr's Food Center, Inc.*, 462 P.2d 747, 752 (Alaska 1969); *Cummins v. King & Sons*, 453 P.2d 465, 467 (Alaska 1969); *Hale v. City of Anchorage*, 389 P.2d 434, 436 (Alaska 1964); *Peterson v. Lang*, 239 Minn. 319, 58 N.W.2d 609, 612 (1953).

8. *See Roach v. Benson*, 503 P.2d 1392, 1394 (Alaska 1972); *Cummins v. King & Sons*, 453 P.2d 465, 467 (Alaska 1969); *Saslow*

*v. Rexford*, 395 P.2d 36, 41 (Alaska 1964); *Hale v. City of Anchorage*, 389 P.2d 434, 436 (Alaska 1962).

9. Nothing in Judge Carlson's findings or in any of the briefs on record suggests that Lindley had any knowledge of the road's condition prior to going onto it. Nor is it likely that he would have had such prior knowledge since he did not live in Petersburg, and had arrived at the barge dock only shortly before the accident occurred.

the loader started down the grade, one-half mile from the barge dock.

Mr. Dreka, who was supervising the men that night, drove his truck, without chains, to the crash scene. He did not recall having any problem driving to the scene. Additionally, a local resident testified that the road conditions varied from one spot to another, and that the area across from the barge landing wasn't always as bad as other spots on the road. Finally, there was no evidence that the loader encountered any difficulty prior to reaching the downhill grade.

There is nothing in the record to suggest that it is *per se* unreasonable to drive a front-end loader on either snowy or wet roads. Although such a vehicle has a propensity for instability on icy roads, every witness with experience on heavy equipment had driven similar equipment in inclement weather.

It is well established that something more than the mere occurrence of an accident generally must be shown before an inference of lack of due care will arise.[10] We have previously held that, if there is no evidence from which a judge could reasonably infer contributory negligence, a finding of contributory negligence constitutes clear error and must be reversed. *Roach v. Benson*, 503 P.2d 1392, 1394 (Alaska 1972).

In the case of Ronald Lindley, we are unable to ascertain from the findings of fact which Judge Carlson entered, what

evidentiary basis he relied upon in concluding that Lindley's conduct was negligent. Specifically, we are uncertain about the evidentiary underpinnings for finding of fact #22, which states that the slippery condition of the Mitkof Highway "became known to Mr. Lindley immediately when the vehicle proceeded onto the highway." Certainly if Lindley did know of the icy conditions of the road, and yet voluntarily proceeded to drive on it in an unstable front-end loader, that conduct could be found to constitute negligence. But, if Lindley reasonably realized the condition of the road only at a time and place at which it was too late to halt the vehicle, negligence would have to be predicated on something other than the mere fact that he was driving an unstable vehicle in known icy conditions. Therefore, we remand this portion of the case for further findings of fact regarding the basis for the conclusion that Lindley was negligent.[11]

In the case of Donald Kaatz, the circumstances are somewhat different. The trial judge found that Donald Kaatz "had driven the portion of the Mitkof Highway which was . . . traversed by the loader within a short time before he climbed into the . . . loader" for the fatal trip. He also found that the condition of the Mitkof Highway "was known to Mr. Kaatz before he climbed into the . . . loader" that night. Finally, the court found that it was unreasonable to operate a loader under these conditions. Therefore,

10. *See Cummins v. King & Sons*, 453 P.2d 465, 467 (Alaska 1969); W. Prosser, Torts, § 39 at 211 (4th ed. 1971); 11 Blashfield, Automobile Law and Practice, § 417.2 at 116 (1968).

11. The state has argued that certain other facts established Lindley's negligence that night. Thus, it has been noted that Lindley departed in the loader without advising Dreka of his departure. While the "usual practice" consisted of Dreka and Kaatz preceding Lindley and the loader with a pickup truck, there was no evidence that a variation from the normal procedure had any bearing on the accident.

The state has noted that Lindley and Kaatz were both riding in the loader's cab in violation of company policy. While this is not disputed, there is no evidence showing any causal connection between the violation and the accident. In addition, evidence suggests that the presence of two men in a cab is not uncommon.

Finally, there was evidence that another loader was already at the gravel pit and therefore it might not have been necessary to drive the death vehicle at all that night. This fact is only relevant if Lindley had been aware of the road's condition.

Judge Carlson concluded that Kaatz' conduct was negligent.

There are several facts in the Kaatz case which support the finding that Kaatz had traveled the road shortly before the accident and therefore knew the condition of the road. First, he was living in Petersburg, four miles north of the barge site, on the day in question. Second, he met the barge when it arrived at about 6:30 or 7:00 p. m. that night, having driven to the barge site in the company's pickup truck. Finally, certain precautionary flares, which Kaatz usually lit when the company was about to load gravel, were lit when the barge arrived at the Petersburg dock that night.

It is entirely reasonable to infer from these facts that Kaatz had driven to the dock shortly before the barge arrived. It seems implausible that Kaatz would have arrived early and waited at the dock for a long time, since the weather was raw and nasty and his home was only a short distance from the dock. Although several witnesses had driven past the dock earlier in the day, there was no testimony placing Kaatz at the dock at any appreciable time before the arrival of the barge.

If Kaatz did drive the road shortly before climbing into the loader, then it is apparent that he would have or should have perceived the treacherous and unsanded condition of the road. If, despite such knowledge, he chose to ride in the cab of a vehicle which is notoriously "unstable" on ice, then his conduct can be properly said to be voluntary and unreasonable. We hold that the trial court did not commit clear error in ruling that Kaatz' conduct that evening was negligent.

### III.

Since we find no clear error in the trial court's ruling that Donald Kaatz was contributorily negligent on the night of the accident, we must next decide whether such negligence should continue to operate as a complete bar to recovery in cases such as this.

 Initially we must consider a procedural objection which the state raises, regarding our review of the issue. The state points out that plaintiff Kaatz first presented the issue of comparative negligence to the trial court on a motion to amend and supplement the court's findings of fact and conclusions of law. It is urged that the issue was not presented below in a timely manner, and therefore is not properly before this court on appeal.[12]

We have consistently held that an issue which was not raised in the trial court will not be reached on appeal.[13] Likewise, in jury cases, one cannot await the jury's verdict before objecting to various aspects of the preceding trial.[14] But, in this judge-tried case, appellant called the matter to the attention of the trial court by motion, memorandum and oral argument, and the trial court expressly rejected appellant's contention. Under these circumstances the issue is properly before us on appeal.[15] We now turn to the question of whether the doctrine of contributory negligence should have continued vitality in Alaska.

 Contributory negligence is the failure of a plaintiff to use due care for

---

12. We note that the state has devoted one paragraph to this procedural contention, and has not cited any authority in support of its claim. This normally would render the state's claim non-meritorious. *Wernberg v. Matanuska Electric Association*, 494 P.2d 790, 794 (Alaska 1972). However, because of the importance of the issue in question, we will briefly address the argument.

13. *See, e. g., University of Alaska v. Simpson Building Supply Co.*, 530 P.2d 1317, 1324 (Alaska 1975); *Powell v. Alaska Marine Equipment, Inc.*, 453 P.2d 407, 410 (Alaska 1969).

14. *See Veal v. Newlin, Inc.*, 367 P.2d 155, 157 (Alaska 1961).

15. *Cf., Church v. Roemer*, 94 Idaho 782, 498 P.2d 1255, 1258 n. 3 (1972); *Williams v. Idaho Potato Starch Co.*, 73 Idaho 13, 245 P.2d 1045, 1050 (1952).

his own safety. When contributory negligence is a substantial factor in bringing about a plaintiff's harm, it operates in law to prevent a recovery of damages by him, even though he was injured through the negligence of the defendant. Restatement (Second) of Torts § 463 (1965). This has been the rule followed in Alaska in the past. *Saslow v. Rexford*, 395 P.2d 36, 41 (Alaska 1964); *Ogden v. State*, 395 P.2d 371, 372 (Alaska 1964); *Bertram v. Harris*, 423 P.2d 909, 914 (Alaska 1967).

The contributory negligence doctrine is of judicial origin. Traditionally it is ascribed to the opinion of Lord Ellenborough in *Butterfield v. Forrester*, 103 Eng.Rep. 926 (K.B. 1809). In that case plaintiff was riding on his horse at a fast pace on the highway. He ran into an obstruction in the roadway which had been left there by defendant. While the case can be interpreted as merely a holding that the plaintiff was himself the sole cause of the accident,[16] it gave rise to the broad and sweeping principle described above. This principle held full sway in the nineteenth century and still persists in the twentieth century, although it has undergone modifications and has been replaced in many jurisdictions by some system of comparative negligence.

Contributory negligence is an "all-or-nothing" doctrine. When it is operative it is a total bar to recovery by an injured plaintiff. A comparative negligence rule, on the other hand, seeks to apportion damages, i. e., distribute responsibility, in proportion to the degree of fault attributable to the parties who have negligently caused an injury.

It should be noted that comparative negligence systems have long been employed in other nations and in various jurisdictions in the United States. In one form or another it is the system employed for apportioning damages in at least 27 states.[17] In federal law comparative negligence has long been employed in admiralty personal injury cases. Under federal statutes it has been applicable since 1908 to cases arising under the Federal Employers Liability Act, 45 U.S.C. § 53, and since 1920 to cases arising under the Jones Act, 46 U.S.C. § 688, and under the Death on the High Seas Act, 46 U.S.C. § 766. It has long been used in other nations of the civilized Western world.[18] Moreover, in England, the source of *Butterfield v. Forrester, supra,* and its precedential descendants, Parliament abolished the contributory negligence defense in 1945 and replaced it with a pure comparative negligence rule for apportioning damages.[19]

The benefits to be derived from a comparative negligence rule are several. It diminishes the need to employ rules which are designed to ameliorate the harshness of the contributory negligence rule. For example, the "last clear chance" doctrine becomes largely superfluous in jurisdictions which employ the comparative negligence rule. It is said that comparative negligence provides a better distribution of risk under a fault system of liability, for both plaintiffs and defendants bene-

---

16. *See* V. Schwartz, Comparative Negligence 3–4 (1974). Apparently Lord Ellenborough's rationale is somewhat terse:
 "[A] party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he does not himself use common and ordinary caution to be in the right." 103 Eng.Rep. at 927.

17. *See Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 864, 532 P.2d 1226, 1232, n. 6 (1975). These states include Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho, Maine, Massachusetts, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Rhode Island, South Dakota, Texas, Utah, Vermont, Washington, Wisconsin, Wyoming, and most recently, California.

18. *See* V. Schwartz, *supra* note 16, at 9–10. These countries include Austria, Canada, France, Germany, the Philippines, Portugal, and Spain.

19. Law Reform Act of 1945, 8 & 9 Geo. 6, c. 28.

fit to the extent of their respective blameworthiness or lack thereof.[20]

The supporters of the contributory negligence rule have argued that fault cannot be measured on a scientific basis, that contributory negligence is a deterrent to careless conduct, that comparative negligence is difficult for courts to administer, and that settlement of negligence cases is encouraged by the contributory negligence rule.[21] Contrary arguments have also been presented.

■ Although jurors' verdicts are not precisely scientific, an allocation of proportionate fault approaches reality more closely than the total loss or victory represented by the contributory negligence rule. As to the deterrent effect of the contributory negligence rule, Dean Prosser points out that the law must also aim to deter wrongful conduct by defendants and not only plaintiffs.[22] Judicial administration of the rule has not presented insuperable difficulties in those jurisdictions which have long employed it. Experience has not borne out the argument that comparative negligence is difficult for courts and juries to apply.

Similarly, careful studies tend to show that settlement of cases can be achieved as readily under the comparative negligence system as under the contributory negligence rule.[23] Studies have also shown that the effect of the comparative negligence rule on insurance rates is minimal.[24]

The central reason for adopting a comparative negligence system lies in the inherent injustice of the contributory negligence rule. As the California Supreme Court recently observed concerning the contributory negligence doctrine:

"It is unnecessary for us to catalogue the enormous amount of critical comment that has been directed over the years against the 'all-or-nothing' approach of the doctrine of contributory negligence. The essence of that criticism has been constant and clear: the doctrine is inequitable in its operation because it fails to distribute responsibility in proportion to fault. Against this have been raised several arguments in justification, but none have proved even remotely adequate to the task. The basic objection to the doctrine—grounded in the primal concept that in a system in which liability is based on fault, the extent of fault should govern the extent of liability—remains irresistible to reason and all intelligent notions of fairness." *Li v. Yellow Cab Company*, 13 Cal.3d 804, 810, 119 Cal.Rptr. 858, 862, 532 P.2d 1226, 1230–31, (1975) (footnotes omitted).

And as Professor Prosser has stated:

"The hardship of the doctrine of contributory negligence upon the plaintiff is readily apparent. It places upon one party the entire burden of a loss for which two are, by hypothesis, responsible. The negligence of the defendant has played no less a part in causing the damage; the plaintiff's deviation from the community standard of conduct may even be relatively slight, and the defendant's more extreme; the injured man is in all probability, for the very reason of his injury, the less able of the two to bear the financial burden of his loss; and the answer of the law to all this is that the defendant goes scot free of all liability and the plaintiff bears it all." W. Prosser, Torts 433 (4th ed. 1971).

---

20. *See* V. Schwartz, *supra* note 16, at 339–41.

21. *Id.* at 335–37.

22. W. Prosser, Comparative Negligence, 51 Mich.L.Rev. 465, 468 (1953).

23. Rosenberg, Comparative Negligence in Arkansas: A "Before and After" Survey, 36 N.Y.S.B.J. 457 (1964).
 It has been reported that in maritime personal injury cases involving a federal question,

in which a comparative negligence standard is used, only 9.6% of the cases terminated in 1974 ever reached trial. Annual Report of the Director of the Administrative Office of the United States Courts, Table C4, at 429 (1974). This supports the argument that a comparative negligence standard does not seriously discourage settlements.

24. V. Schwartz, *supra* note 16, at 337–38.

■ Of great significance to us is the recent adoption of a comparative negligence rule by judicial decision in other jurisdictions. In many instances the rule has been adopted through legislative action, but increasingly it is perceived that a rule which is judicial in origin can be, and appropriately should be,[25] altered by the institution which was its creator.[26] Thus Florida in *Hoffman v. Jones,* 280 So.2d 431 (Fla.1973), and California in *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 119 Cal. Rptr. 858, 532 P.2d 1226 (1975), through the judicial process have overturned the contributory negligence rule and have replaced it with the comparative negligence principle.

We are also particularly impressed with a recent decision of the United States Supreme Court in the field of admiralty. In *United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), the Court discarded the historic rule of divided damages in maritime collision cases and replaced it with a pure comparative negligence rule. Hereafter liability for property damages in admiralty collision cases will be allocated in proportion to the fault of each party.

The Court's reason for abandoning the divided damages rule is relevant to our consideration of the contributory negligence rule: the divided damages rule, like the contributory negligence rule, yields palpably crude and inequitable results in cases where the degree of fault is greatly disproportionate. Furthermore, the Court was persuaded by the rejection of the rule by every other maritime nation in the world. All other maritime nations, including England where the rule emerged, employ a proportionate fault measure of damages in marine collision cases.

■ It appears to us that continued adherence to the contributory negligence rule, absent legislative change, represents judicial inertia rather than a reasoned consideration of the intrinsic value of the rule. We are persuaded that the contributory negligence rule yields unfair results which can no longer be justified. We hold, therefore, that the doctrine of contributory negligence shall no longer be applicable in Alaska, and in its stead the principle of comparative negligence must be applied.

■■ Systems of comparative negligence can take several forms. Under a "pure" form the plaintiff's damages are simply reduced in proportion to the amount of negligence which is attributed to him. There are also several "modified" forms of comparative negligence. One of these is the divided damages rule in maritime collision cases, which has now been abolished. Another is the 50% system, applicable by statute in many of the states. Under that system a negligent plaintiff may recover so long as the amount of his fault does not exceed 50% of the total fault attributable to the parties.[27] We are convinced that the pure system is the one which is the simplest to administer and which is best calculated to bring about substantial justice in negligence cases. It is the system most favored by modern jurists and commentators.[28] We will employ the pure system of comparative negligence hereafter in Alaska.

Our adoption of this new principle does not, of course, end our judicial tasks in this area. Subsidiary questions and problems concerning the relationship of the

---

25. *See* Leflar, Comments on *Maki v. Frelk,* 21 Vand.L.Rev. 918, 926–29 (1968).

26. *Contra, Maki v. Frelk,* 40 Ill.2d 193, 239 N.E.2d 445, 447 (1968); *Krise v. Gillund,* 184 N.W.2d 405, 409 (N.D.1971).

27. There are numerous variations of the modified system. These are discussed at length in V. Schwartz, *supra* note 16, at 73–82.

28. *See, e. g., Hoffman v. Jones,* 280 So.2d 431, 436–37 (Fla.1973); *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 872, 532 P. 2d 1226, 1240 (1975); *United States v. Reliable Transfer Co.,* 421 U.S. 397, 401–410, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); V. Schwartz *supra* note 16, at 341–48.

new rule to other doctrines of tort law must necessarily be adjudicated in the future. We must, for the most part, await future cases for the further development of law in this field.

 We are, however, prepared to deal with one facet of the comparative negligence rule at this time: the status of the doctrine of "last clear chance". The rationale underlying this doctrine is that even though the plaintiff has been contributorily negligent he should still be able to recover his entire damages if the defendant had the last opportunity to avoid the accident. The application of the doctrine is particularly apt in cases where the plaintiff is in a helpless predicament, owing to his own negligence, and the defendant, although perceiving plaintiff's situation and realizing the plaintiff's peril, fails negligently thereafter to avoid injuring the plaintiff.[29] Unfortunately the search for limits to the doctrine and for the proper sphere of its application has led to great confusion in the law of tort, much of which can probably never be dispelled.[30] But it is recognized by nearly all who have reflected upon the subject that the last clear chance doctrine is, in the final analysis, merely a means of ameliorating the harshness of the contributory negligence rule.[31] Without the contributory negligence rule there would be no need for the palliative doctrine of last clear chance. To give continued life to that principle would defeat the very purpose of the comparative

negligence rule—the apportionment of damages according to the degree of mutual fault. There is, therefore, no longer any reason for resort to the doctrine of last clear chance in the courts of Alaska.[32]

 Lastly, we must determine the extent to which the rule we have announced today shall have application to cases other than those which are filed in the future. The rule will, of course, apply in the retrial of the case in which we have reversed the judgment today. It will also apply to any case in which the trial commences after the date of this opinion. In any case pending on direct appeal in which the application of the comparative negligence rule was requested or asserted in the trial court, and in which the request or assertion was preserved as a ground for appeal, there shall be a retrial under the principle of comparative negligence. Our holding today will be applicable to any trial which has commenced, but has not been submitted for decision by the trier of fact, and in which prior to submission to the trier of fact for decision there has been a request or an assertion that the rule of comparative negligence should be applied. ·

 We observe that in the present case defense counsel offered no evidence with regard to the issue of damages. This may have occurred because of a belief by defense counsel that under the contributory negligence doctrine plaintiffs' claims should have been barred entirely. Since we have abandoned the contributory negli-

---

29. The doctrine had its origins in the English case of *Davies v. Mann*, 152 Eng.Rep. 588 (1842). Plaintiff there left his ass fettered upon the highway, and the defendant drove into it. It was held that plaintiff could recover, despite his negligence, if the defendant might by proper care have avoided injuring plaintiff's animal. One commentator has said,
"[T]he doctrine has been in search of a lucid rationale ever since." V. Schwartz, *supra* note 16, at 129.

30. See the discussion in W. Prosser, Torts, 427–33 (4th ed. 1971).

31. *See, e. g., id.* at 433; *Cushman v. Perkins,* 245 A.2d 846, 850 (Maine 1968); *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 869, 532 P.2d 1226, 1237 (1975).

32. This is not to say that the notion of last clear chance is unavailable as a matter of trial court advocacy. Either party may attempt to persuade the trier of fact that one party or another should bear a greater proportion of the liability for an accident by reason of the factual pattern adduced, including a consideration of the helplessness or inattentiveness which may have led to a plaintiff's predicament, with subsequent injury at the hands of a negligent defendant.

gence doctrine today, we feel that it is appropriate to require a new trial on the issue of damages.

We remand this case to the superior court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part.

BURKE, J., not participating.