[Civ. No. 6527.   Third Dist.   Feb. 25, 1942.]

WALTER KELLER, JR., a Minor, etc., et al., Appellants, v. H. C. MARKLEY, Respondent.

J. Oscar Goldstein, Burton J. Goldstein and Manwell & Manwell for Appellants.

Yale S. Kroloff and Rich & Weis for Respondent.

THE COURT.—This is an appeal from a judgment entered pursuant to a verdict rendered in favor of defendant, under directions of the court.

The action is prosecuted by plaintiff, Walter Keller, Jr., a minor of the age of eleven years, by and through his father, Walter Keller, Sr., guardian *ad litem*, and Walter Keller, Sr., individually, against H. C. Markley, the defendant and respondent above named. The plaintiff, Walter Keller, Jr., seeks to recover damages in the sum of $25,030, alleged to have been caused by the negligence of defendant, arising out of an automobile accident. The father, Walter Keller, Sr., asks for damages in the sum of $3,345.83, the amount of expenses incurred in caring for the injuries received by his minor son.

The question presented is the sufficiency of the evidence to establish the negligence of defendant, and thus sustain a verdict against defendant. In *Newson* v. *Hawley*, 205 Cal. 188-190 [270 Pac. 364], it is said:

"It is a settled rule of law regarding trials by jury that in a proper case the court has full power to direct the jury to render a verdict. This power exists in favor of the defendant when there is no substantial evidence tending to prove all the controverted facts necessary to establish the plaintiff's case. It is not necessary that there should be an absence of conflict in the evidence. To deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one."

In order to determine this question, it becomes necessary to set forth the evidence rather fully.

The injuries to plaintiff, (the Keller boy), which were serious in effect, were received as a result of a collision between his bicycle, which he was operating, and the car being driven by defendant, which was a 1929 Ford Pickup model. The accident took place at the intersection of U. S. Highway 99E, and what is known as "Kent Avenue." This is situated at a place called "Lomo" in Sutter County. Highway 99E runs due north and south, up to a point referred to in the evidence as "Lomo Curve." Proceeding north on this highway, and approximately three hundred to four hundred feet beyond this curve, an intersection is formed by the junction of Kent Avenue and Highway 99E. Kent Avenue cuts off from the highway in a northeasterly direction, forming a triangle between these two thoroughfares. A stop sign is located on Kent

Avenue, approximately fifty feet from the intersection, and about one hundred fifty feet further north, and on the same side of the avenue as the stop sign, there is a grocery store.

Shortly before the accident, which took place at about 3:00 o'clock p. m. on February 25, 1939, the Keller boy and a friend, Sterli Epperson, who was fifteen years of age, were proceeding, on bicycles, south on Kent Avenue toward the intersection with Highway 99E. The Epperson boy was to the right hand side of the Keller boy, and the Keller boy, in position, was closer to the center of Kent Avenue. The testimony of Epperson, on the question as to whether the Keller boy was in front or behind him at the time of the collision, is contradictory, as well as his testimony bearing upon the question as to whether he saw the Keller boy from the time they left the grocery store up until the moment of impact between the bicycle and the car. Epperson testified, at one stage of the direct examination, and in answer to the question as to what direction the Keller boy was going, that: "It looked to me like he was trying to go across the highway." The evidence is not conclusive as to the position of the Keller boy's bicycle, at the time of impact, with relation to the stop sign, although Epperson testified that he was just even with this stop sign, or had gotten a short distance beyond it when he heard the noise of the collision. This witness testified that as he reached the stop sign, he glanced up and saw the car (defendant's) making the turn into Kent Avenue. He stated that the car was on the paved portion, *and on the right hand side of the road.* At the point of impact, there is no question, and it is not disputed, that plaintiff was over on defendant's side of the highway. Subsequent to the collision, and before defendant's car had been moved in any manner, the evidence establishes the fact that at least the right front and rear wheels of defendant's car were *off the pavement on his right side,* resting upon the gravel or dirt shoulders of the highway.

The injuries to the Keller boy were of such serious consequence that as a result his memory was affected, and at the time of the trial, some fourteen months after the date of injury, he was unable to testify as to any of the facts concerning the accident. The loss of memory was apparently a result of having received a blow about the head which caused a severe concussion. He also received a severe injury to one of his legs, and injury to his eyesight.

Defendant was the only eyewitness who saw the collision between defendant's car and the bicycle operated by plaintiff. There were, however, a number of witnesses who arrived at the scene of the accident shortly after the collision. These witnesses, called by plaintiff, included H. C. Williams, a traffic officer, S. B. Castleman, the owner and operator of the grocery store located at the intersection in question, A. L. Chandler, a laborer, and Joseph Reheremann and Norbert Reheremann, brothers, who are engaged in farming. These two brothers were performing carpentry work, at the time of the accident, on a small building located near the grocery store.

The defendant, Markley, was called under section 2055 of the Code of Civil Procedure, and testified in answer to plaintiff's questions concerning the circumstances connected with the accident. The defendant stated that he was a farmer; had resided in Sutter County for thirty years; and that he was thoroughly familiar with the intersection which was the scene of the accident, as he ordinarily turned onto Kent Avenue from Highway 99E in going to his ranch. Markley testified that just prior to the collision with plaintiff's bicycle, and before making a right hand turn into Kent Avenue, that he was traveling at approximately twenty-five miles per hour. He stated that before he reached the intersection, he saw the two boys on their bicycles on Kent Avenue, proceeding toward the intersection. He judged that they were one hundred or one hundred fifty feet away from him at that time, and that he was about twenty feet from the intersection. The boys, at this time, the defendant states, were riding alongside one another, four or five feet apart. The defendant stated that after he made the turn into Kent Avenue, he drove off of the concrete portion of the highway onto the dirt shoulder on his right hand side, as the plaintiff, who was about seventy feet away at this time, was riding his bicycle some five or six feet out from the opposite side of the road, toward the center of the highway, and that the road was quite narrow. The testimony of defendant, relating the circumstances just prior to the collision, is as follows:

"Q. When you saw him toward the center of the highway, did you blow your horn? A. No. Q. Did you ever, at any time, from the first minute you saw those boys on their bicycles, coming down the Avenue, ever blow your horn? A. No, sir. Q. Why not? A. It happened so quick. The

boy run in front of the car, and I put on my brakes and tried to stop and wheel my car to the right. Q. The whole thing happened very quickly? A. Yes. Q. How fast were you going when you made the turn around the intersection? A. Between twenty and twenty-five. Q. How do you know you were going twenty or twenty-five miles an hour? A. I turned across "Death Curve," and had to slack up there to cross that, and I was going to turn into Kent Avenue, and had my car down so I could turn at Kent Avenue. Q. At the time you were making the curve there and saw that boy, as I asked you before, when he was close to the center of the highway (right) there, did you then believe that you should pull to the left or off onto the shoulder, or something was going to happen? A. *I didn't know anything was going to happen, but I pulled off on the shoulder.* Q. How far was the boy away from you when you first saw him before you hit him? A. I couldn't say that. One hundred or a hundred and fifty feet. Q. Did you ever see the boy after that? A. Yes. Q. When? A. Just before I hit him. Q. How far away from him were you before you hit him? A. Maybe fifteen feet; I couldn't say. Q. What did you do when you saw him fifteen feet away? A. I put on my brakes and wheeled my car to the right. That is all I could do."

The traffic officer, H. C. Williams, who testified for plaintiff, stated that at the time of the accident he was patrolling the highway in the vicinity, and that he arrived, by coincidence, at the scene of the collision within a very few minutes after its occurrence. The Keller boy had not yet been removed to the hospital. Mr. Williams testified that Kent Avenue was a paved highway, ten or fifteen feet in width, with shoulders composed of a mixture of dirt and gravel; that defendant's car was located with all four wheels off of the paved portion of Kent Avenue; and that the only skid marks from the car of defendant were two small skid marks approximately two feet long located back of the two wheels. This witness stated, in answer to the question as to whether there were any tracks going from the right hand side of Kent Avenue across to the position of defendant's car, that there were bicycle tracks, and he testified in the following language:

"There were tracks from the bicycle that started on the edge of the pavement and circled right over on to the car. About in that position. These tracks were made by dust and

dirt that is usually made when a rubber tire pulls off of the dirt onto a pavement. These bicycle tracks hit across the highway right in front of where the car was sitting. Q. How many tracks did you find? A. Just two. The front and rear wheels, and after the bicycle straightened up, there was just one.''

Mr. Williams stated that at the time he saw the Keller boy, some few minutes after the accident, he was lying on a blanket, approximately four feet in front of defendant's car. He believed the boy had been moved prior to that time.

S. B. Castleman, the owner and operator of the grocery store located near the intersection and scene of the accident, testified that at the time of the collision he was engaged in carpentry work on a building situated near the intersection; that he did not see the collision, but heard the crash and ran toward the scene of the accident; that *plaintiff was lying ten or twelve feet in front of defendant's car,* and that plaintiff's bicycle was under the axle and between the two front wheels of the car; that the right front wheel and right rear wheel of the car were off of the pavement on the grass shoulder of the highway; and that the *left wheels of the car were a foot or so on the pavement.*

A. L. Chandler, who arrived at the scene of the accident some seven minutes after the collision, gave substantially the same testimony in regard to the position of the defendant's car, the plaintiff's bicycle, and the position of plaintiff as he lay on the highway. He testified that defendant's car was approximately thirty feet from the intersection of Highway 99E.

Joseph Reheremann and Norbert Reheremann, who were working on the building with S. B. Castleman, both arrived at the scene of the accident at approximately the same time as Mr. Castleman. Their testimony as to the location of defendant's car, the bicycle, and the Keller boy, conforms substantially to the testimony given by the other witnesses. They all testified that the Keller boy lay some eight to ten or twelve feet in front of the car.

Walter Keller, Sr., the father of plaintiff, arrived at the place of the accident a few minutes after its occurrence, and he testified, as did the others, that the plaintiff was lying ten or twelve feet in front of defendant's car. He also testified that the ground was torn up between the place where the plaintiff lay upon the highway and the location of the car,

and that there were marks which were similar in form and size to the pedals of the bicycle.

The questions presented in considering the motion for a directed verdict, were those of negligence on the part of defendant, and contributory negligence on the part of plaintiff. If, under the evidence, as a matter of law, the defendant was not guilty of negligence, or if as a matter of law, the plaintiff was guilty of contributory negligence, the action of the trial court in directing the verdict for defendant was perfectly proper. The question of contributory negligence on the part of plaintiff becomes immaterial if it be concluded that defendant, as a matter of law, is free from negligence.

We are of the opinion, after a careful consideration of the evidence presented in the record before us, that not only is there a lack of evidence of sufficient substantiality in support of a verdict which might have been returned in favor of plaintiff, but that on the contrary, all the evidence indicates that defendant, at the time of the collision with plaintiff, was operating his automobile with extreme due care. Granting to plaintiff's evidence all the weight to which it is legally entitled, it is not reasonably possible to draw from that evidence any legitimate inference of negligence on the part of defendant in the operation of his automobile. The evidence indicates clearly that defendant was not driving his car at an unlawful rate of speed. There are two important physical facts disclosed by the evidence which conclusively indicate that the defendant was not traveling more than fifteen or twenty miles per hour, as he so testified, at the time of the collision. Those physical facts are: First, the defendant's car was brought to a stop a very short distance from the intersection, and completely over on the defendant's right hand side of the highway. In fact, the right front and rear wheels of the car were off on the shoulders. If defendant had been traveling at an excessive rate of speed, there would have been the tendency, in the maneuvering of this right hand turn, to throw his car toward the center of Kent Avenue. At least his car would not have been brought to a stop far over on his right hand side, as was the case, so short a distance from the actual turn in the highway. Secondly, the skid marks from the tires of defendant's car were only two or two and one - half feet in length. This fact indicates that defendant's car was traveling at a very low rate of speed, and was quite completely under the control of its operator.

There is no evidence in the record, nor was there any attempt to prove, that the brakes of defendant's car were faulty.

The testimony given by defendant, in explanation of the cause of the accident, and which we believe is fully supported by other evidence, including the testimony of the traffic officer, relating to the course of plaintiff's bicycle tracks, indicates that he was operating his car with necessary care in regard to the safety of plaintiff, and that he did all that could reasonably be required of a prudent man in attempting to avoid the collision.

The defendant stated that prior to making the turn onto Kent Avenue, he observed the two boys on their bicycles, one hundred to one hundred and fifty feet away, proceeding toward the intersection, and riding side by side on their own right side of the highway. There was no obstruction of Kent Avenue at this point on Highway 99E, and there is no reason to discredit defendant's testimony in this regard. The defendant then testified that when he was about seventy feet from the boys, he pulled off on the shoulder of the highway on his right hand side, because one of the boys (the Keller boy), was out five or six feet toward the center of the highway. The position of defendant's car and plaintiff's bicycle, immediately after the accident, together with the evidence of the bicycle tracks leading from the opposite side of Kent Avenue across the highway to the point of impact, is in support of defendant's testimony just related, that is, that he observed plaintiff some seventy feet away, riding his bicyle toward the center of the highway, and pulled his car off onto the right shoulder. The defendant's statement that the Keller boy, when approximately fifteen feet distant, suddenly turned directly in front of the car, is also consistent with the foregoing evidence pertaining to the physical facts.

It is true that during the examination of defendant, he gave testimony that might be construed to indicate that he did not constantly watch the boys on their bicycles after having observed them from the point on Highway 99E, some one hundred to one hundred fifty feet distant, and appellant would have us believe that defendant failed to observe them at all after having seen them from the distance of one hundred to one hundred fifty feet. This conclusion is based upon the following testimony:

''Q. How far was the boy away from you when you first saw him before you hit him? A. I couldn't say that. One

hundred or a hundred and fifty feet. Q. Did you ever see the boy after that? A. Yes. Q. When? A. Just before I hit him. Q. How far away from him were you before you hit him? A. Maybe fifteen feet—I couldn't say."

It is to be remembered, however, that defendant had already testified that he saw the boys about seventy feet away after having observed them from a distance of one hundred to one hundred and fifty feet, and that it was at this time, that is, when they were seventy feet away, that he started to pull off onto the shoulder of the highway. In view of this testimony, and again referring to the position of defendant's car, as located after the accident, it is our opinion that it would not be fair or rational to deduce from the quoted testimony that defendant had failed to observe the plaintiff, after having first seen him, until just before the impact. If defendant had not observed plaintiff and his position on the highway, it is highly improbable that defendant's car would have been entirely off the highway onto the shoulder.

It is our opinion that there is absolutely no evidence of any substantiality from which it might be concluded that defendant was guilty of negligence in the operation of his car at the time of the accident. The evidence fails to disclose that defendant was under a duty to use his horn, as required by section 671 of the Vehicle Code.

Negligence in a particular case is determined by application of the standard of the "ordinarily prudent or reasonable person." (*Fouch* v. *Werner*, 99 Cal. App. 557 [279 Pac. 183].) It is necessary, in order to conclude that an individual has been guilty of negligence, that there be present in the record some substantial evidence indicating that the individual has failed under the circumstances to conform to the duty of care required of the "ordinarily prudent or reasonable person." There is no evidence in the present case from which it might be concluded that defendant failed to act as an "ordinarily prudent or reasonable person."

Concluding, as we do, that as a matter of law, there is insufficient evidence in support of a determination of negligence on the part of defendant, it becomes unnecessary to discuss the question of contributory negligence on the part of plaintiff (the Keller boy). Contributory negligence and the consideration of the presumption that the Keller boy exercised reasonable and ordinary care for his own safety,

are issues which were material to the disposition of this appeal, only in the event that there was sufficient evidence from which a jury might have found, as a question of fact, that defendant was guilty of negligence.

We believe we have sufficiently answered all material issues raised by this appeal.

The motion for a directed verdict in favor of defendant was properly granted, and the judgment entered pursuant thereto is hereby affirmed.

Appellants' petition for a hearing by the Supreme Court was denied April 23, 1942. Carter, J., voted for a hearing.