Pearl M. CUMMINS, Appellant,

v.

KING & SONS and Earl S. King, Appellees.

No. 974.

Supreme Court of Alaska.

April 25, 1969.

John M. Savage, James L. Johnston, Savage, Erwin & Curran, Anchorage, for appellant.

George N. Hayes, John K. Brubaker, Delaney, Wiles, Moore & Hayes, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Appellant rented an apartment from appellees. The front entrance to the apartment contained several cement steps. Handrailings were located on each side of the steps.

There was evidence that on February 21, 1966 the steps were covered by a combination of ice and snow. Appellant testified that at about 3:30 p. m. she left her apartment to go to her husband's car to get a package of cigarettes. As she descended the steps her feet went out from under her and she fell. As a consequence of the fall she suffered certain injuries. She brought this action for damages against appellees, claiming that they were negligent in failing to keep the steps clear of ice and snow. A jury returned a verdict for appellees and appellant then brought this appeal.

The court instructed the jury on the issue of contributory negligence. Appellant maintains this was error because there was no evidence of contributory negligence on her part.

The only direct evidence of the circumstances of the accident is found in the testimony of appellant, her husband and a friend, Chester Kuzmech. Appellant testified that she was not wearing high heels, but nurses' oxfords, that as she started down the steps she was holding on to one of the railings, that there were six or seven steps, that she had taken only one step when her foot slipped and she fell, and that as she fell she continued to hold on to the railing. Appellant's husband, who had preceded her down the steps, testified that appellant was holding on to the railing, that she had taken no more than one or two steps when she slipped and fell, and that as she fell she "hung on to the railing." Kuzmech, who had also preceded appellant down the steps, testified that he was watching appellant as she started to come down the steps, that he cautioned her to take it easy because of the ice and snow, that she was holding on to the railing, that she was coming down the steps very slowly, and that her feet suddenly went out from under her and she fell.

This testimony is evidence that appellant was walking down the steps with knowledge of their icy condition. Appellees contend that such evidence alone raises a jury question on the issue of contributory negligence, and cite cases to sustain that view.[1] We do not agree with this view.

Assuming that a jury finds a defendant negligent, a finding that the plaintiff was also negligent would bar his recovery. This would mean that the plaintiff was contributorily negligent—that he had failed to exercise reasonable prudence for his own safety when he perceived a danger to himself created by the defendant's negligence.[2] But in order to justify submitting to the jury the question of whether the plaintiff himself was negligent, there must be evidence of such negligence. There must be facts from which one could reasonably infer that such negligence existed. As to the quantity of evidence needed, the test is whether the facts and resulting inferences are such that reasonable minds could justifiably have different views on the question of whether the plaintiff had been negligent. If they could, then it would be proper to submit that issue to the jury for its determination under appropriate instructions. If they could not —if reasonable minds could reach only

---

1. Representative of those cases are Ahearn v. Roux, 96 N.H. 71, 69 A.2d 701, 702 (1949) and Hemmings v. Weinstein, 151 Conn. 502, 199 A.2d 687, 689 (1964), where the courts held, with little discussion, that where one walks on ice with knowledge of the icy condition a factual issue for the jury on the question of contributory negligence is presented.

2. Leavitt v. Gillaspie, 443 P.2d 61, 66 (Alaska 1968).

the conclusion that the plaintiff was not negligent—then submitting the issue to the jury would not be justified.[3]

The evidence as to the circumstances of the accident showed that appellant, while holding on to the handrail, and descending the stairs slowly, had taken only one or two steps when she slipped and fell on the icy stairs. There were no facts indicating that she had acted other than as a reasonably prudent person, concerned with his own safety, would have acted. On these facts reasonable minds could reach only one conclusion: that appellant was not negligent.

[redacted] We have held that mere knowledge of an icy condition before passing over it does *not* establish negligence.[4] We now hold that one's attempt to pass over ice, with knowledge of the icy condition, does not by itself raise an inference of negligence so as to permit that issue to be submitted to the jury. Before such issue properly could be submitted to a jury, there must be other evidence giving rise to an inference that in the manner in which he crossed or walked upon the ice, one lacked the care of a reasonably prudent person concerned for his own safety.

[redacted] Appellees contend that there is evidence of appellant's own negligence other than the mere fact of her use of the icy stairs with knowledge of the icy condition. They point to the fact that appellant had had no difficulty in negotiating the icy steps at other times both prior to and after the accident, and they say that this in itself is evidence of the fact that when appellant fell she was using less than due care. We do not agree. The mere fact that appellant slipped and fell at one time, and not at others, proves nothing more than that on this one occasion she slipped and fell. Accidents may happen in the absence of negligence. Something more must be shown before an inference of lack of due care would arise.

Appellees argue that the jury might reasonably have inferred that appellant was in a hurry when she started down the stairs to go to her husband's car to get some cigarettes, and that in so hurrying she did not exercise the necessary care for her own safety. Appellees say that such an inference would arise from the fact that it was a cold day, around zero, that appellant was wearing a dress and jeans, and had thrown only a light sweater over her shoulders.

[redacted] Again, we disagree. An inference is a fact or proposition deduced, by a process of reasoning, as a logical consequence from other established facts.[5] The connection, by a reasoning process, between the nature of appellant's clothing on this chilly day and the manner in which she started down the stairs is remote at best. Using a process of reasoning, it is not a logical consequence, from the nature of appellant's clothing and the temperature, that the manner in which she started down the stairs while holding on to the railing was imprudent or careless. There would be no such inference from established facts any more than there would be an inference that she was not imprudent or careless had she worn a heavy coat instead of a sweater.[6] Other facts more directly bearing on the manner in which appellant started to descend the stairs would be required before an inference of lack of due care would arise. There were no such facts in evidence.

[redacted] It was error to instruct the jury on contributory negligence. If we knew that the jury had simply found appellees free from negligence, and had made no finding on contributory negligence, then the error would be harmless. But we have no way of ascertaining what the jury's

3. *Id.* at 64–65.

4. Hale v. City of Anchorage, 389 P.2d 434, 436 (Alaska 1964).

5. Black's Law Dictionary 917 (4th ed. 1951).

6. In a deposition taken prior to trial appellant testified that she had worn a light sweater. At the trial she testified that she had on a coat or sweater-parka. Her husband testified that she had worn a sweater or coat.

findings were on these issues. The jury may have found that appellees were negligent, but that appellant's contributory negligence required a verdict for appellees. In this event the error in instructing the jury on contributory negligence would not be harmless but prejudicial to appellant. Since we have no way of ascertaining the jury's finding on the issue of contributory negligence, a new trial must be ordered.

The court instructed the jury on assumption of risk, defining that concept as meaning that "one who voluntarily exposes himself to a known and appreciated danger due to the negligence of another may not recover for injuries sustained thereby." The jury was told that even if they found appellees negligent and appellant free from contributory negligence, their verdict nevertheless must be for appellees if they found that there was a risk in descending the steps, that the risk was known to appellant, and that appellant knowingly went down the steps known to her to be dangerous due to an accumulation of ice and snow. Appellant contends that the giving of such instruction was error.

 In Leavitt v. Gillaspie [7] we disapproved of the doctrine of assumption of risk and held that a jury should not be instructed on this subject in a negligence action. We did not say whether this decision should be applied prospectively only, i. e., whether our ruling should be limited to cases tried after the date of that decision. We need not decide that question here, despite the fact that this case was tried before our decision in Leavitt. It is conceivable that the jury decided that appellant was contributorily negligent, without deciding whether she had "assumed the risk" of injury within the meaning of the instructions on assumption of risk. Since that is a possibility, and since an instruction on contributory negligence was not justified, a new trial must be ordered. At the

new trial instructions on assumption of risk may not be given under the *Leavitt* decision. This would be so even if that decision has prospective application only, because the new trial would take place subsequent to the date of that decision. And since there must be a new trial and the *Leavitt* decision will be controlling there, it is unnecessary to decide here whether the doctrine of assumption of risk was inapplicable under the facts of this case for any reason other than that given by us in expressing our general disapproval of the doctrine in *Leavitt*.[8]

The judgment is reversed. The case is remanded for a new trial in accordance with the views expressed in this opinion.

owed the tenant the duty of due care, and that the court's instruction on assumption of risk was incomplete and misleading.

---

7.  443 P.2d 61, 67–69 (Alaska 1968).

8.  Appellant contends that the doctrine of assumption of risk is no defense in a landlord-tenant case where the landlord