**Gradelle LEIGH, Appellant,**

**v.**

**Dana LUNDQUIST, Appellee.**

**No. 2378.**

Supreme Court of Alaska.

Sept. 26, 1975.

David Shimek and Warren W. Matthews, Jr., Matthews, Dunn & Baily, Anchorage, for appellant.

Irving S. Bertram, Hughes, Thorsness, Lowe, Gantz & Powell, Anchorage, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and BURKE, Justices.

## OPINION

BOOCHEVER, Justice.

The primary issue confronting us on this appeal is whether the trial judge erred in refusing to give a requested instruction on comparative negligence. This case arose from a two-car collision which occurred in the City of Fairbanks at the intersection of Peger Road and Airport Access Road (hereinafter Access Road) on July 14, 1970. The plaintiff Ms. Gradelle Leigh brought an action for personal injuries allegedly caused by the negligence of the defendant Dana Lundquist. The jury returned a verdict in favor of the defendant, and judgment was duly entered upon the verdict.

The trial judge refused to give a requested instruction on comparative negligence, and, over objection, gave an instruction that contributory negligence was a complete defense. In *Kaatz v. State*, 540 P.2d 1037, (Alaska, 1975), decided subsequent to the trial of this case, we adopted the doctrine of pure comparative negligence as the law of Alaska. *Kaatz*, however, is not necessarily dispositive of this appeal. First we must determine whether a jury question was presented. In order to do that, we must decide whether defendant's negligence, if any, proximately caused the injuries suffered by the plaintiff. If so, we must then decide whether the issue of comparative negligence was properly raised at the trial court level so as to be preserved for review. We answer both of those questions in the affirmative.

I

The jury's verdict was in favor of the defendant. Since it was a general verdict, there is no way to ascertain whether it was based on the jury's determination that Mr. Lundquist was not negligent, or in the alternative, that he was negligent but that Ms. Leigh's contributory negligence barred recovery. Only in this latter situation would the comparative negligence instruction have been mandated. Such a mandate is predicated upon the possibility of a jury verdict based on Mr. Lundquist's negligence.

Mr. Lundquist contends that this court must examine the evidence in the light most favorable to him, and that, under this standard, there is no basis for a verdict of negligence on his part and, therefore, the jury's verdict in his favor can readily be sustained. Our task in determining whether or not a comparative negligence instruction should have been given is not the same as in meeting a challenge to a court or jury's finding of negligence. In that situation, we would indeed be compelled to view the evidence in the light most favorable to the party prevailing below in order to see whether it could sup-

port the challenged finding or verdict.[1] Here, however, we are confronted with a challenge of a different nature, that is, to adverse rulings on instructions, and we must determine whether there was any evidence which, when viewed most favorably to Ms. Leigh, would have justified a jury finding of negligence on the part of Mr. Lundquist.[2] Put another way, our task is to determine whether Lundquist would have been entitled to a directed verdict on the issue of his absence of negligence. Otherwise, the instruction as to comparative negligence should have been given, and the objection to the instruction on contributory negligence sustained. The test used to review a denial of a directed verdict is whether the evidence when reviewed in a light most favorable to the nonmoving or opposing party is such that reasonable men could not differ in their judgment.[3] If the evidence allows for no diversity of opinion among reasonable men, then the directed verdict will be upheld.

There would be little gained by an exhaustive analysis of the facts leading to the collision. A diagram of the scene of the accident depicting the position and direction traveled by the parties' vehicles as well as the location of the vehicles of the two eyewitnesses is attached as Appendix A. Suffice it to say that Lundquist proceeded along Peger Road through the Airport Way intersection and then into the closely adjacent separate Access Road intersection where his vehicle and that of Ms. Leigh collided. For the purposes of this appeal, we are not concerned with the alleged negligence of Ms. Leigh who was driving on the Access Road and entering the Peger Road intersection.

It is elemental that in order for liability to be imposed in a negligence action, the plaintiff must establish a duty of due care owed him by the would-be defendant, a breach of that duty, and, finally, that the injury was proximately caused by the breach of duty.[4] Generally speaking, the duty of due care or ordinary care is the duty to act with that amount of care which a reasonably prudent person would use under the same or similar circumstances.[5] There are three possible ways in which Lundquist might have

1. *City of Fairbanks v. Smith*, 525 P.2d 1095, 1096 (Alaska 1974); *Graham v. Rockman*, 504 P.2d 1351, 1354 (Alaska 1972); *National Bank of Alaska v. McHugh*, 416 P.2d 239, 242 (Alaska 1966); *Chirikoff Island Cattle Corp. v. Robinette*, 372 P.2d 791, 794 (Alaska 1962).

2. An analogous situation is discussed in *Cummins v. King & Sons*, 453 P.2d 465, 466–67 (Alaska 1969), wherein Justice Dimond, speaking for the court, held that an instruction on contributory negligence was erroneous, stating:

But in order to justify submitting to the jury the question of whether the plaintiff himself was negligent, there must be evidence of such negligence. There must be facts from which one could reasonably infer that such negligence existed. As to the quantity of evidence needed, the test is whether the facts and resulting inferences are such that reasonable minds could justifiably have different views on the question of whether the plaintiff had been negligent. If they could, then it would be proper to submit that issue to the jury for its determination under appropriate instructions. If they could not—if reasonable minds

could reach only the conclusion that the plaintiff was not negligent—then submitting the issue to the jury would not be justified. (footnote omitted)

*See Groseth v. Ness*, 421 P.2d 624, 629 (Alaska 1966).

3. *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87 (Alaska 1974); *Breitkreutz v. Baker*, 514 P.2d 17 (Alaska 1973). *See National Bank of Alaska v. McHugh*, 416 P.2d 239 (Alaska 1966) (same test utilized in reviewing trial court's refusal to grant judgment n. o. v.). These cases indicate that whenever as here a trial judge's decision has the effect of removing a question such as comparative negligence from the jury thereby eclipsing its function as a fact finder, the same stringent standard of review will be appropriate.

4. *Larman v. Kodiak Electric Ass'n*, 514 P.2d 1275, 1279 (Alaska 1973); *Ferrell v. Baxter*, 484 P.2d 250, 259 (Alaska 1971).

5. *Patterson v. Cushman*, 394 P.2d 657, 662–63 (Alaska 1964); *Warner v. Santa Catalina Island Co.*, 44 Cal.2d 310, 282 P.2d 12 (1955); *Stewart v. Smith*, 68 Ariz. 91, 200 P.2d 353 (1948); *Keller v. Markley*, 50 Cal.App.2d 155, 122 P.2d 614 (1942).

failed to exhibit ordinary care. First, he might have been exceeding the posted speed limit of 50 mph at the time he entered the intersection. Second, although proceeding at a rate within the posted speed limit, he might have been driving unreasonably fast given the condition of the road (wet pavement). Third, he might have failed to reduce speed upon entering the intersection, or he might have entered the intersection just before or just after the yellow traffic signal turned red.

■ With regard to the first two theories of negligence, there was testimony furnished by the witnesses from which the jury could have found that in proceeding through the first intersection immediately prior to the collision, Lundquist was exceeding the 50 mph speed limit, or at least proceeding at an unreasonable rate. Immediately after the collision, Lundquist was heard to complain that he could have made it if it hadn't been for the plaintiff. Although the sun was shining at the time of the accident, the highway was wet, which has a bearing on the reasonableness of Lundquist's speed.

The traffic regulations bearing on the third possible theory of Lundquist's negligence [6] are 13 AAC 02.275(c) providing that a "driver shall . . . drive at an appropriate reduced speed when approaching or crossing an intersection . . . " and § 7.205(b)(1) of the City of Fairbanks Municipal Code specifying that

> [v]ehicular traffic facing the [yellow signal] is thereby warned that the red . . . signal will be exhibited immediately thereafter and such vehicular traffic shall not enter or be crossing the intersection when the red signal is exhibited.

The defendant concludes that the plaintiff was not a member of that class of persons the regulations were aimed at protecting. The plaintiff was not injured while in or attempting to enter or cross the intersection of Airport Way and Peger Road. Instead, Ms. Leigh was attempting to cross an entirely separate intersection controlled by a stop sign. Furthermore, the plaintiff did not even claim to be acting in reliance on the signal light in the other intersection.

■ The defendant's contention, although ably argued, misconceives the general purpose of the traffic law he purports to be interpreting. The laws requiring stopping for red lights or slowing for passage through an intersection certainly are designed primarily to protect those others who may be present at the intersection at a given moment. Such traffic laws, however, are designed as well to protect all those people traveling in or near the intersection by car or by foot who foreseeably would be affected by unreasonable speed in passing through the intersection or disregard for the operation of a given traffic signal.[7]

It is therefore clear that Mr. Lundquist had a duty to act with the degree of care which a reasonably prudent person would use under the same or similar circumstances, and that such duty applied to one such as Ms. Leigh entering the adjacent intersection. Whether he in fact breached that duty is a question for the jury to resolve.

Counsel further presents an argument as to whether the collision was proximately caused by such breach of duty. First, Lundquist contends that even if the traffic light was red, an "act or an omission [cannot be] regarded as a cause of an event if the particular event would have occurred without it." [8] He alleges that Ms. Leigh would have proceeded into the intersection

---

6. As to the effect of the violation of such regulations, *see Breitkreutz v. Baker*, 514 P.2d 17 (Alaska 1973); *Ferrell v. Baxter*, 484 P.2d 250 (Alaska 1971).

7. *See generally Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).

8. W. Prosser, Law of Torts 238 (4th ed. 1971); *Rouleau v. Blotner*, 84 N.H. 539, 152 A. 916 (1931) (negligence to be actionable must be causal).

regardless of the color of the traffic signal at the other intersection, and therefore, the plaintiff's negligence was the sole cause of the accident. He insists that the color of the light could not have been the cause of the accident since it could not be said that the accident would not have occurred if the light had been green. While this last statement may be a truism, the remainder of the defendant's argument is sophistic. No one has argued that the color of the light caused the accident. Rather, we must focus on Lundquist's actions in allegedly negligently failing to observe that signal. Obviously, if the light had been red and Lundquist had stopped, the collision would not have occurred and therefore any negligence on the defendant's part could readily be found causal.

The second part of Lundquist's proximate cause analysis is somewhat more provocative. He contends that, assuming the traffic light was in his favor or that he non-negligently passed through the intersection even though the light may have turned red at some time while he was within it, any possible negligence with respect to the speed of his vehicle was not the proximate cause of the accident since, even at the allegedly reasonable speed of 30 mph, he would have been unable to avoid the collision with Ms. Leigh's car. This statement relies on J. Baerwald's *Traffic Engineering Handbook* (3rd ed. 1965) wherein it states that even at 30 mph, a driver would require 159 feet to react and to bring his car to a stop on wet pavement. At most, Lundquist had only a distance of 110 feet from the middle of the Airport Way-Peger Road intersection to the point of impact. Therefore, the defendant contends, since the accident would have occurred whether or not the defendant had been going faster than the conditions warranted, the fact that he might have been exceeding a prudent speed would have no bearing on the proximate cause of the accident.[9]

The problem with this argument is that it would require this court to make certain major incursions into the province of the jury. It would require this court to find that 30 mph was a reasonable speed under the circumstances and that, even at such a reduced speed, it would have been impossible for Lundquist to have employed effective avoidance tactics. We also would have to usurp the jury's function in determining the distance at which Mr. Lundquist could first have observed that Ms. Leigh's vehicle was proceeding into the intersection. Furthermore, aside from its mention in the appellee's brief, we can find no reference to Baerwald's manual in the record below, nor is there any other evidence relating to reaction times and braking distances under various road conditions contained in the record before this court on this appeal. In any event, the defendant's position is grounded on the assumption that this crossing of the intersection was non-negligent except perhaps as to his speed. Insofar as this too constitutes a finding of fact, we are unable to accept even that basic premise. We believe that the issue of proximate causation presented in the instant case involves close factual

9. *See Dombeck v. Chicago, Milwaukee, St. Paul Pac. R.R. Co.*, 24 Wis.2d 420, 129 N.W.2d 185, 193 (1964), where the Wisconsin Supreme Court held that it was not error for the trial court to refuse to submit the question of the train's speed to the jury since there was no evidence in the record to indicate that the train could have avoided the collision with the automobile whether the train had been traveling the permissible 40 mph or speeding at 60 mph. *See also Zahn v. Arbelo*, 72 Wash.2d 636, 434 P.2d 570 (1967), where the Supreme Court of Washington upheld the trial judge's decision not to present the issue of the plaintiff's contributory negligence (inattentiveness) to the jury since, even assuming proper attention by the plaintiff, he would not have noticed the defendant's action (failure to yield right-of-way) in time to have avoided the collision.

determinations to be resolved by the finder of fact.[10]

In conclusion, we hold that the defendant did owe the plaintiff a duty of due care, that there was evidence from which a jury could have found that he breached that duty, and that there was evidence from which the jury could have found that the defendant's negligence proximately caused the injuries suffered by the plaintiff. Therefore, the issue of the adoption of a comparative negligence standard, if properly raised, must be confronted.[11]

## II

The issue of whether the superior court should apply a standard of comparative negligence rather than permit a defense of contributory negligence was first raised in the proceedings below at the time the plaintiff submitted her proposed jury instructions, more specifically, by means of requested Instructions Nos. 2 and 3. Pursuant to the pre-trial order of June 8, 1973, the parties were required to submit their proposed instructions "prior to the trial". The plaintiff complied with this order.

■ In the *Kaatz* case, the plaintiff first presented the issue of comparative negligence to the trial court as a motion to amend and supplement the court's findings of fact and conclusions of law. It was urged, as here, that the issue was not presented below in a timely manner, and

therefore was not properly before this court on appeal. While *Kaatz* was not a jury case, its holding that the issue was properly raised controls here where the proposed instructions on comparative negligence were presented prior to trial. In view of the long standing precedent in Alaska whereby contributory negligence was held to be a complete defense to a negligence action, counsel could assume that any change would probably have to await action by the supreme court. Little would be likely to be accomplished by raising the issue earlier by means of motion accompanied by thorough briefing.[12] Nor do we believe that earlier presentations of the issue would have so affected settlement possibilities for us to consider the issue to be waived when it was directly presented to the court prior to trial. Moreover, counsel for Ms. Leigh further preserved the issue by properly objecting to the court's instruction that the plaintiff's contributory negligence would be a complete defense. The issue was subsequently set forth in the statement of points on appeal pursuant to Alaska R.Civ.P. 9(e). We hold that the issue of comparative negligence is properly before us.

In *Kaatz*, we held that the new rule pertaining to comparative negligence would apply to any case pending on appeal in which the application of the comparative negligence rules was requested or asserted in the trial court and in which the request

---

10. *See Roberts v. Fisher*, 169 Colo. 288, 455 P.2d 871 (1969) ; *Rosevear v. Rees*, 77 Idaho 270, 291 P.2d 856 (1955).

11. *See Larman v. Kodiak Electric Ass'n*, 514 P.2d 1275, 1281 (Alaska 1973).

12. The defendant refers the court to our decision in *Harris v. Barrett & Lesh, Inc.*, 426 P.2d 331, 334–35 (Alaska 1967). In that case, the appellant's brief before this court was completely inadequate on the issue of comparative negligence, and counsel in fact did not expressly urge the adoption of such a new standard until oral argument of the appeal. There we observed:

We are not inclined to rule upon such a significant policy matter when it has

been so casually treated by appellant's counsel.

The *Harris* case, however, involved briefing before an appellate court. In the instant case, both parties have presented extensive briefs on the issue of comparative negligence which constitute excellent treatments of the opposing sides of the question and a completely adequate adversarial basis from which we could make our decision. This court in *Harris* did not purport to set up rigid briefing standards applicable at the trial court level. Therefore, the lack of adequate briefing of a question below, in itself, does not necessarily affect the propriety of this court's entertaining the question on review, and our holding in *Harris* cannot be deemed controlling here.

or assertion was preserved as a ground for appeal. This appeal comes squarely within that holding and, accordingly, the case is remanded for a retrial under the principle of comparative negligence.

Remanded.

APPENDIX A