Annette HINMAN, Appellant,

v.

Stanley SOBOCIENSKI and Bering Sea Enterprises, Inc., Appellees.

No. S–3405.

Supreme Court of Alaska.

April 5, 1991.

Christian N. Bataille, John F. Rosie, Fairbanks, for appellant.

Marcus R. Clapp, Richard L. Musick, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

On October 24, 1985, Annette Hinman was found injured at the bottom of a stairway in the basement of her apartment building in Nome. Hinman sued the owner of the building, Stanley Sobocienski, alleging that he was negligent in failing to maintain the stairway in a reasonably safe condition and that his negligence caused her injuries. At trial Hinman introduced evidence indicating that the stairway was unreasonably dangerous and that she was found injured at its bottom. She introduced no further evidence, however, tending to show that the condition of the stairway contributed to her injuries. The superior court issued a directed verdict for Sobocienski on the ground that any inference that the condition of the stairway caused Hinman's injury would be pure speculation and thus unreasonable. The sole issue in this appeal is whether this ruling was correct. We hold that it was not and therefore reverse.

I

In October 1985, Annette Hinman lived in an apartment located in the Bering Sea Saloon building in Nome. Thomas Deuel, Hinman's boyfriend, leased the apartment from Stanley Sobocienski, the owner of the building. On October 24, 1985, Hinman planned to meet some friends at the saloon at about 9:00 p.m. Hinman had a few drinks before going to the saloon, and recalls arriving at the saloon around 6:00 p.m. The next thing she remembers is being on the basement floor. She does not recall how she got there.

Deuel awoke upon hearing the sound of sobbing. He followed the sound to the door of the basement, where he turned on the light and saw Hinman lying at the bottom of the stairway. Deuel estimated that he found her at about 2:00 a.m. Paramedics arrived and evacuated Hinman to Humana Hospital in Anchorage for treatment.

Sobocienski used the basement for storing liquor inventory. The door to the basement is located in the central access hallway of the Bering Sea, between the apartments and the saloon. It is adjacent to a stairway leading up to Sobocienski's apartment on the second floor and across the hall from the door to Hinman's apartment. Hinman frequently used the stairs to Sobocienski's apartment to reach his kitchen and bathroom facilities, because her apart-

ment was without functional plumbing. In using the stairs, Hinman saw inventory being brought into the basement on at least one occasion.

The door to the basement has a double-keyed type deadbolt lock and swings out over the stairway. The stairway has no landing and no handrails. Hinman's experts testified that this configuration constituted a "major life/safety violation" of the Uniform Building Code[1] and "a dangerous situation." One expert concluded "an accident [was] foreseeable. It's a set of conditions that we try to avoid and we avoid them because of the—the extent and the amount of information we have that they cause or are contributory to accidents."

There is a light just outside the door in the hallway, which apparently casts some light onto the stairway when the door is open. The stairwell is also lighted when the basement lights are turned on, but Deuel saw no light in the basement when he opened the door and found Hinman. One expert testified that relatively dim light, even at a level that otherwise meets code requirements, would create "an extreme risk" in conjunction with the lack of handrails.

Sobocienski normally kept the door to the basement locked to protect the inventory. The key to the door was kept alongside the cash register in the bar. The only persons authorized to go in the basement were Sobocienski and the bartender on duty. Sobocienski testified that he and a helper were the last persons to enter the basement before Hinman was found. He could not remember if he had locked the door after they finished stocking. Hinman did not have a key to the door.

On June 26, 1987, Hinman filed a complaint for damages against Sobocienski in superior court. Hinman alleged that Sobocienski was negligent in failing to make the

stairway safe and in failing to warn her of the unsafe condition and that this negligence was a proximate cause of her injuries. The court denied cross-motions for summary judgment and the case proceeded to trial by jury. Sobocienski moved for a directed verdict on the ground there was insufficient evidence of causation, and the superior court granted his motion. Hinman filed this appeal.

## II

■ We review the superior court's ruling on a motion for directed verdict "to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable men could not differ in their judgment." *Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 92 (Alaska 1974). "The test is objective; and, if there is room for diversity of opinion among reasonable people, the question is one for the jury." *City of Whittier v. Whittier Fuel & Marine Corp.,* 577 P.2d 216, 220 (Alaska 1978). In this case, the superior court granted Sobocienski's motion for a directed verdict on the ground that there was insufficient evidence to support a reasonable inference that Hinman's injuries were proximately caused by Sobocienski's negligent maintenance of the stairway. We will affirm the superior court's ruling only if the evidence, when viewed in the light most favorable to Hinman, does not permit a reasonable inference that Hinman's injuries were proximately caused by Sobocienski's negligence.[2]

## III

■ Viewed in the light most favorable to Hinman, the pertinent facts for the purposes of this appeal are that Sobocienski

---

**1.** Sobocienski states that "the trial court specifically reserved the question of whether the Uniform Building Code applied." The court nonetheless allowed the opinions concerning code violations, on the ground that the code at least represented a normative standard of reasonable conduct.

**2.** For the purposes of this appeal, Sobocienski concedes that he was negligent in maintaining the stairway.

negligently maintained a dangerous[3] and dimly lighted stairway, that Sobocienski negligently failed to keep the door leading to this dangerous stairway secured against foreseeable access, and that Hinman was found severely injured at the bottom of this stairway, with no recollection as to how she came to be there. The only issue is whether a jury could reasonably infer from these facts that the dangerous condition of the stairs was more likely than not a substantial factor in causing Hinman's injuries. The superior court felt that such an inference would be unreasonably based on a "mere possibility." We disagree.

■ The superior court was certainly correct in believing that a "mere possibility of causation is not enough." *City of Fairbanks v. Schaible*, 375 P.2d 201, 204 (Alaska 1962). If a plaintiff's explanation from the evidence as to how her injuries were caused is not more probable than any other explanation, she has not borne her burden of proof. In *Schaible*, for example, the plaintiff argued that the deceased was asphyxiated by smoke that entered her apartment through a negligently maintained ventilation duct. The entire building, however, was engulfed in flames, and it was "at least equally possible" that the deadly smoke entered the open door of her apartment from the intensely burning hallway. *Id.* In fact, the plaintiff's theory of causality seemed improbable given the circumstances. We therefore reversed the lower court's finding that Schaible's asphyxia was caused by smoke from the ventilation system. *Id.*

The superior court erred, however, in apparently equating "mere possibility" with lack of evidence:

There is no evidence in the record here, whether direct or circumstantial, to indicate whether the plaintiff here slipped, tripped, stumbled, was thrown, was shoved or passed out. There is no evidence to indicate that the unsafe condition on the stairs ... played any role. There is no evidence to indicate that the access was gained, either by a failure to lock or by the plaintiff or an unknown companion or other person, simply taking the key from near the register and gaining access that way. The Court has to have more than a mere possibility.

Because Hinman did not produce evidence tending to prove that she fell due to the stairs' dangerous condition—rather than that she was thrown or that she jumped—the superior court concluded that Hinman's proffered cause was only a "mere possibility."

■ This reasoning overstates Hinman's burden. To withstand a motion for directed verdict, it is enough that Hinman assert a cause for her injuries which common experience suggests is more likely than not the actual cause:

If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists.

Circumstantial evidence, expert testimony, or common knowledge may provide a basis from which the causal sequence may be inferred. Thus it is every day experience that unlighted stairs create a danger that someone will fall. Such a condition "greatly multiplies the chances of accident, and is of a character naturally leading to its occurrence." When a fat person tumbles down the steps, it is a reasonable conclusion that it is more likely than not that the fall would not have occurred but for the bad lighting.

*Prosser and Keeton on The Law of Torts* § 41, at 270 (W. Keeton 5th ed. 1984) (footnotes omitted).[4]

---

**3.** Sobocienski conceded, for purposes of the ruling on the motion for directed verdict, that it was negligent to design the stairway without a landing.

**4.** *See also* Restatement (Second) of Torts § 433B comment b (1965) ("[T]he triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case.... Such questions [of causation] are normally for the jury, and the court may seldom rule on them as matters of law."). The Restatement also uses as an illustration the case where an

Common experience likewise suggests that the presence in a bar/apartment building of a dangerous, dimly lighted staircase greatly increases the chances that a patron or resident will accidentally fall and suffer injury. When a resident is then found injured at the bottom of those stairs, a reasonable inference is that the dangerous condition more likely than not played a substantial part in the mishap.[5] "[T]he court can scarcely overlook the fact that the injury which has in fact occurred is precisely the sort of thing that proper care on the part of the defendant would be intended to prevent...." *Id.* The absence of evidence that the plaintiff fell—rather than jumped or was pushed—does not negate the reasonableness of the inference.[6]

The superior court's reliance on *McInturff v. Chicago Title & Trust Co.*, 102 Ill.App.2d 39, 243 N.E.2d 657 (1968), is misplaced. Even if we were to find the Illinois court's legal reasoning persuasive, the facts and circumstances of that case are easily distinguished. In *McInturff*, the plaintiff's husband fell down a negligently maintained stairway and was killed. There were no witnesses to the accident. Unlike Hinman, in the case at bar, however, the plaintiff in *McInturff* was required to show ordinary care on the part of the deceased; the court found that this burden had not been met. *Id.* 243 N.E.2d at 661. Also unlike Hinman, the deceased in *McInturff* routinely ascended and descended the staircase several times a day, as part of his job, and had done so for several years without incident; this apparently suggested to the

court either that he may not have been using ordinary care when he fell or that the condition of the staircase, though poor, was not a great hazard. *Id.* 243 N.E.2d at 662. Finally, the court considered important several facts which simply have no analogue in Hinman's case:

> [A]ny inferences which might arise from the evidence in the case in favor of the decedent on the issue of proximate cause were weakened by the testimony that the decedent had lost weight over the last year, had recently undergone an operation for a malignant tumor of the kidney, had missed about six weeks of work, and had a life expectancy of five to ten years, at the most.

*Id.* Although it is not clear to us *why* these facts were so significant to the Illinois appellate court, it is clear that they, along with the possibility of contributory negligence, played a major role in that court's decision to reverse a jury verdict in favor of the plaintiff. *Id.* 243 N.E.2d at 663. Thus, the result of *McInturff* has little relevance to this case.

The judgment of the superior court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

MOORE, Justice, dissenting.

Directed verdict is proper when, after weighing the evidence in the light most favorable to the plaintiff, fair-minded jurors could reach only one conclusion. *Martinez v. Bullock*, 535 P.2d 1200 (Alaska

---

individual falls down a negligently maintained stairway. *Id.* at illustration 3.

**5.** The statement in Justice Moore's dissent, that our decision today indicates a "willingness [in future cases] to send all questions of comparative negligence to the jury," is quite incorrect. We have no disagreement with Justice Moore's argument that it makes no difference whether the evidence being challenged is evidence of causation relating to the defendant's or the plaintiff's conduct, and we do not intend by our decision today to suggest otherwise. A motion for a directed verdict, in either case, is governed by the same legal standard. Nor do we disagree with Justice Moore's contention that causation is not a question for the jury, when the evidence will not permit a reasonable inference of proxi-

mate cause. Our only disagreement is with Justice Moore's belief that the evidence of causation in the case at bar is not sufficient to create a question for the jury. In our judgment, the evidence would allow a jury reasonably to infer that the plaintiff's injuries were proximately caused, in whole or in part, by the defendant's negligence. Thus, we hold that the issue of causation presented a jury question, and that the defendant's motion for a directed verdict should, therefore, have been denied. Justice Moore believes otherwise.

**6.** It is, of course, *possible* that the plaintiff jumped or was thrown down the stairs by some other person, but there is nothing in the record to suggest either of these possibilities. Any such inference would, therefore, be unreasonable.

1975). When an issue remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. *See City of Fairbanks v. Schaible,* 375 P.2d 201 (Alaska 1962); Prosser and Keeton, *The Law of Torts* § 41, at 269 (5th ed. 1984). Because Hinman has done nothing more than speculate that the condition of the stairway proximately caused her injury, and she has shown no evidence to support such a finding, directed verdict was properly granted. Indeed, this case presents the precise situation for which directed verdict was intended. I would therefore affirm the superior court's ruling.

Hinman herself is unable to recall how she entered the stairwell and how she fell. She has done no more than establish that the stairs were poorly designed or maintained and that she was found injured at their base. Viewing the evidence presented in the light most favorable to the plaintiff, I can only conclude that any one of a multitude of events could have proximately caused Hinman's injuries. As the superior court observed, we do not know whether Hinman slipped, tripped, stumbled or even was thrown down the stairs. Equally possible is that she passed out due to her consumption of alcohol and fell. Even if we could infer that Hinman opened the door to the stairway and attempted to walk down, there is no indication whether she fell because of the condition of the stairway or because of her own negligence.[1]

Hinman has offered no evidence to show that the condition of the stairway was more likely than not the cause of her fall. As a result, a jury deciding this case could do no more than speculate as to which of several plausible theories regarding proximate cause should be adopted. Although the negligent condition of the stairway *could* have been the cause of Hinman's harm, it

is well-settled that "[a] mere *possibility* of causation is not enough" to justify sending a case to the jury. *City of Fairbanks v. Schaible,* 375 P.2d at 204 (emphasis added); Prosser and Keeton, *The Law of Torts* § 41, at 269 (5th ed. 1984).

In *Schaible,* we overturned a trial court's ruling that smoke from a negligently-maintained ventilating system had caused Mrs. Schaible's death. We found the court's conclusion clearly erroneous given the absence of any evidence that the smoke which asphyxiated Schaible entered her apartment through the ventilation system. In determining that there was insufficient evidence from which the court could reasonably infer causation, we stated:

> That the asphyxia was caused by smoke from the ventilating system is possible. But it is at least equally possible that the smoke came not from there but rather from the hallway and then through the apartment doorway ... A mere possibility of causation is not enough. When the matter remains one of conjecture, as it does here, the trial court must find against the party carrying the burden of proof.

375 P.2d at 204 (footnote omitted).

Similarly, it is possible that the condition of the stairway caused Hinman's harm. However, because Hinman has failed to show any evidence which makes her allegation any more likely than the possibility that she fell due to her own negligence or the act of a third party, this court must direct a verdict for the defendant. Like the allegations in *Schaible,* Hinman's argument that a "reasonable inference" exists that the stairway caused her to fall is not really an inference, which is "a conclusion logically derived from established facts." *Id.* Instead, this "inference" is nothing

---

1. Hinman argues that Sobocienski's failure to keep the stairway door locked, thus preventing access, establishes "but for" causation. However, this is not sufficient to take the case to the jury when there is no evidence linking the negligent condition of the stairway behind the door to the injury. The extent to which Sobocienski has a duty to prevent access to the stairs is dependent on his general duty to maintain them in a reasonably safe condition. The failure to prevent access by itself is not a breach of duty. Therefore, if there is no evidence linking Sobocienski's negligence in failing to maintain the stairway to Hinman's injuries, Sobocienski is entitled to a directed verdict.

more than "an opinion based primarily on conjecture." *Id.*

The majority's willingness to assume proximate causation in the absence of any facts which explain the cause of Hinman's fall displays an apparent willingness on its part to weaken, if not abolish, the directed verdict mechanism in Alaska. Hinman openly admits that she has no idea how her injuries occurred. Nonetheless, the court finds that her unsupported opinion is sufficient to permit a "reasonable inference" of causation. After this decision, it is difficult to imagine a case which would not be allowed to go to the jury; a plaintiff's allegations alone appear to suffice.

I interpret this willingness to weaken the directed verdict mechanism on issues of liability to be indicative of a corresponding willingness to send all questions of comparative negligence to the jury. Such action runs contrary to prior decisions where we have held it improper to send the jury issues of comparative or contributory negligence in the absence of support for such claims. *See, e.g., Wilson v. City of Kotzebue,* 627 P.2d 623 (Alaska 1981); *Cummins v. King & Sons,* 453 P.2d 465 (Alaska 1969). However, I see no reason why comparative negligence issues should be treated any differently from issues of negligence and liability; different rules for substantively identical situations are not justified.

Therefore, if the majority deems it proper to submit this case to a jury without any guidance whatsoever as to precise cause of harm, it must be equally willing to do the same regarding any comparative negligence claims brought by Sobocienski against Hinman. It is at least equally likely that Hinman's harm was caused by her own negligence or that of a third party as by Sobocienski's negligence. Even-handed application of the majority's decision thus requires that, if the jury is allowed to speculate, it also must be allowed to speculate on Hinman's own contribution, if any, to her injuries. Because I find such speculation on both sides of the case inappropriate, I respectfully dissent.